## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VW CREDIT LEASING, LTD, | No. 4:24-CV-00145 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BOROUGH OF STATE COLLEGE, PENNSYLVANIA, | |
| Defendant. | |

### MEMORANDUM OPINION

**MARCH 25, 2026**

## I.    BACKGROUND

In mid-2022, parking authorities for the Borough of State College, Pennsylvania ("State College") called Karch Automotive ("Karch") to tow an Audi S5 Coupe ("Audi") from a public parking garage after the registered owner—a lessee—had accrued a number of parking violations and the Audi had been immobilized for several days. Karch towed and stored the Audi, charging a daily fee as authorized by the State College Municipal Code. Several months later, Karch identified Volkswagen Credit Leasing, Ltd. ("VW") as the Audi's titled owner and reached out to it to demand payment of the fees, which by that point were substantial. VW, which had not seen the Audi for several years after the lessee stopped making payments and disappeared, refused to pay the full fee to recover the Audi. Karch would not negotiate the price, so VW sued.

After litigating against Karch for more than a year in state court and against State College and Karch for two more years in federal court, VW moved for summary judgment against State College on three constitutional claims. State College cross-moved for summary judgment on the same issues. Both parties also cross-moved for sanctions.

Those motions are now ripe for disposition; for the reasons below, both motions for summary judgment are granted in part and denied in part, VW's motion for sanctions is granted to a very limited extent, and State College's motion for sanctions is deferred pending additional development of the issue of damages.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[2] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[3] Conversely, to survive summary judgment, a plaintiff must "point to admissible

---

[1]    Fed. R. Civ. P. 56(a).

[2]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).

[3]    *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).

evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[4]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[5] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[6] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[7] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[8]

"This standard does not change when the issue is presented in the context of cross-motions for summary judgment.'"[9] "When both parties move for summary judgment, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'"[10]

---

[4] *Id.*

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[6] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[7] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[8] Fed. R. Civ. P. 56(c)(3).

[9] *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)).

[10] *Id.* (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

### B.    Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts. The parties generally agree on all of the record evidence, and both contend that no disputes of fact should preclude summary judgment here. Where there are disputes about factual representations, the proposing party has failed to support its contention and I thus construe the fact against it.

### 1.    The Audi Lease

On October 11, 2017, Plaintiff Volkswagen Credit Leasing, Ltd. ("VW") leased a 2018 Audi S5 Coupe ("Audi") to Yuchen Tang.[11] On October 19, 2017, the Pennsylvania Department of Transportation ("PennDOT") issued a Certificate of Title for the Audi listing VW as the owner and Mr. Tang as lessee.[12] After extending the lease agreement for several months,[13] Mr. Tang attempted to return the Audi in April of 2020, but the dealership was closed due to the COVID-19 pandemic.[14] VW and Mr. Tang agreed to an additional extension in late April or early May 2020,[15] but Mr. Tang stopped making payments and fell into default by June 2020.[16] Under the terms of the lease, VW was entitled to repossess the vehicle by virtue of Mr. Tang's default.[17] VW

---

[11]   Doc. 52 (Pl.'s SOUMF) ¶ 5; Doc. 50 (Def.'s SOUMF) ¶¶ 5-6. Technically the lease agreement was drawn up by Audi Driscoll Automotive Group, LLC, *see* Doc. 52 ¶ 5, but the agreement's terms immediately sold the vehicle and assigned the lease agreement to VW. *Id.* ¶ 6.

[12]   Doc. 52 ¶ 7.

[13]   *Id.* ¶ 8.

[14]   Doc. 50 ¶ 9.

[15]   Doc. 52 ¶ 8; Doc. 50 ¶ 9.

[16]   Doc. 52 ¶ 10; Doc. 50 ¶ 10.

[17]   Doc. 52 ¶¶ 10, 11.

attempted to contact Mr. Tang to obtain payment or to repossess the vehicle, but Mr. Tang proved unreachable.[18] Because of Mr. Tang's disappearance, VW lost track of the Audi.[19]

### 2.    The Tow

In February of 2022, the Audi resurfaced in a public parking garage in State College, Pennsylvania.[20] It remained in the garage for several months, apparently abandoned and accruing parking violations, until July 8, when Borough authorities booted the car and applied an immobilization notice to its windshield.[21] The immobilization notice stated that "[t]o secure release of this vehicle, payment must be made for all outstanding parking violation notices, citations for unpaid parking violations, and for applicable immobilization and impoundment fees."[22] It warned that "any vehicle immobilized over 72 hours is subject to towing and impoundment, resulting in additional fees."[23] State College also ran a search on the Audi's tags, which identified only the registered owner—Mr. Tang—and not the titled owner—VW.[24] State College attempted to contact Mr. Tang but was unsuccessful.[25]

---

[18]    Doc. 50 ¶¶ 11-12.
[19]    *See* Doc. 50-1 (McGovern Dep.) at 21:8-21.
[20]    Doc. 50 ¶ 13; Doc. 52 ¶ 15.
[21]    Doc. 50 ¶¶ 18-19; Doc. 52 ¶ 16.
[22]    Doc. 50-4 (Immobilization Notice).
[23]    *Id.*
[24]    Doc. 52 ¶¶ 17-18; *see* Doc. 50 ¶¶ 46-49.
[25]    Doc. 52 ¶¶ 15-18.

After more than 72 hours with no response, State College had the Audi towed on July 13, 2022.[26] State College uses private companies for towing services,[27] and it called former Defendant Karch Automotive ("Karch") to tow and store the Audi.[28] On the day of the tow, State College mailed out a letter to Mr. Tang providing information about the tow and the process for recovering the vehicle.[29] State College sent follow-ups to Mr. Tang on July 21, August 18, and September 15, 2022, and unsuccessfully initiated a magistrate action on October 12, 2022.[30] Because State College's searches had not identified VW as the Audi's titled owner, it did not provide any notice or information to VW.[31]

### 3.     State College's Parking Ordinance

State College's decisions to fine, boot, and tow the vehicle, as well as the process it followed and the notices it sent, were all pursuant to its municipal ordinances.[32] Under

---

[26]   Doc. 50 ¶ 21; Doc. 52 ¶ 19.

[27]   Doc. 50 ¶¶ 22-26.

[28]   *Id.* ¶ 27; Doc. 52 ¶ 19. VW and Karch negotiated a settlement, and I dismissed Karch as a Defendant on May 1, 2025. Docs. 33, 34.

[29]   Doc. 50 ¶¶ 29-30; Doc. 52 ¶ 20. State College claims to have sent a copy of this form to PennDOT, Doc. 50 ¶ 30, but the only evidence it identifies is a letter addressed solely to Mr. Tang. Doc. 50-6. The deposition testimony of its designated representative nowhere suggests that this form was sent to PennDOT. Doc. 46-6 at 91, 98. As I will explain later, it does not appear that State College was required by law to send this form to PennDOT. Because State College has only offered a conclusory statement that it submitted the form to PennDOT without adequate supporting evidence, I reject its contention and deem undisputed that State College *did not* send this form to PennDOT. Fed. R. Civ. P. 56(e)(2); *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023). This is the main basis for VW's motion for sanctions, *see* Doc. 65 (Mot. for Sanctions) at 7-11, and I view the decision to construe this fact against State College as a sufficient sanction. *See id.* at 15-17 (agreeing that the appropriate sanction is in "the Court's sound discretion.").

[30]   Doc. 52 ¶¶ 22-23; *see* Doc. 50 ¶¶ 50-55.

[31]   Doc. 52 ¶¶ 24, 49-51.

[32]   Doc. 50-5 (State College, Pa., Mun. Code ch. XI).

6

its Municipal Code, State College may immobilize (i.e. "boot") a vehicle once it accrues the requisite number of parking violations.[33] The Municipal Code requires the Borough to provide notice "on the vehicle, in a conspicuous manner," of the reason for immobilization and the process for boot removal.[34] An owner is entitled to an "post-immobilization hearing" to contest the validity of the booting, and may obtain removal of the boot by answering the underlying citations (either by formally contesting or paying the fines) and paying the booting fee.[35] The Municipal Code also notes that "[n]othing in this ordinance shall be construed to deprive any person of their constitutional right to a hearing or trial as to the violations for which parking violation notices or citations have been issued."[36]

State College may remove "[a]ny vehicle parked on any . . . public property in the Borough, which is parked in violation of any provision of the law or of any ordinance of the Borough, or which has been immobilized in excess of 72 hours."[37] "Removal shall be done only . . . by a licensed towing company," and "[a]ny vehicle removed shall be impounded in a storage facility."[38] Upon application, State College issues licenses to towing companies which meet the requisite qualifications to authorize them to tow vehicles at the request of the Borough.[39] The Municipal Code permits

---

[33]   State College, Pa., Mun. Code § 11-1002.
[34]   *Id.* § 11-1003.
[35]   *Id.* §§ 11-1004, 11-1005, 11-1007.
[36]   *Id.* § 11-1010.
[37]   *Id.* § 11-703(a); *see id.* § 11-1006
[38]   *Id.*
[39]   *Id.* §§ 11-705–11-706.

towing companies to charge vehicle owners a one-time fee for towing and a daily fee for storage.[40] "Towing and storage fees . . . shall be paid . . . before the owner or authorized person of such vehicle shall be permitted to repossess or secure the release of the vehicle."[41] If the Borough or the towing company determines that a vehicle was towed in error, the towing and storage fees are waived.[42] A vehicle owner may also pay the fees "under protest" in order to secure release of the vehicle while fee disputes are pending.[43] Karch was a licensed towing company and had a valid "storage facility."[44]

The Municipal Code contains several notice and recordkeeping provisions related to towing. Within an hour of a tow, "the Centre County Emergency Communications Center shall be notified" and must be provided with "the written authorization" including details about the vehicle, tow, and location for recovery.[45] Within one business day of a tow, the State College Police Department must send notice of removal and impounding, including information for recovery, "to the registered owner of the vehicle."[46] State College concedes that it did not send notice to titled but non-registered owners.[47]

---

[40]  *Id.* §§ 11-708(i), 11-710.
[41]  *Id.* § 11-1006.
[42]  *Id.* §§ 11-708(h), 11-708(i).
[43]  *Id.* § 11-715.
[44]  *See* Doc. 50 ¶ 27.
[45]  State College, Pa., Mun. Code § 11-711.
[46]  *Id.* § 11-712.
[47]  Doc. 50 ¶¶ 47-48.

State College also contends that it provides a hearing procedure to appeal the parking violations which resulted in the vehicle's immobilization and eventual tow.[48] This process is less formal, but is noted on State College's website and confirmed by State College officials.[49] State College asserts that the appeals process exists pursuant to state law and that its decisions can be appealed to Pennsylvania state court.[50]

### 4.    Pennsylvania Abandoned Vehicle Law

The parties dispute whether Pennsylvania's Abandoned Vehicle laws apply to this process in State College. VW argues that the Municipal Code fails to explicitly incorporate the relevant provisions of state law, and contends as a factual matter that State College failed to produce the state law in discovery.[51] State College contends that state law is both implicitly and explicitly incorporated into the Municipal Code and is a matter of public record. I agree with State College that the Municipal Code incorporates Pennsylvania law, but the factual record indicates that State College did not immediately invoke the state law when it towed the Audi for parking violations.

The Municipal Code sections repeatedly cite to and incorporate sections of the Pennsylvania Vehicle Code,[52] and the Pennsylvania Vehicle Code states that it is to "be

---

[48]    Doc. 50 ¶¶ 56-65 (citing State College, Pa., Mun. Code § 11-1010); Doc. 52 ¶¶ 52-54.

[49]    Doc. 50 ¶¶ 57-61; Doc. 52 ¶¶ 52-53; *see* Doc. 46-6 at 101.

[50]    2 Pa. Cons. Stat. § 751-754; *see* Doc. 52 ¶ 52.

[51]    *See* Doc. 57 (Pl.'s Opp'n) at 10 ("The ordinance does not mention 75 Pa. C.S. § 7301 *et. al.*, nor instruct State College police or its tow company to communicate with PennDOT at all.").

[52]    *Id.* § 11-704 (defining "Vehicle Code" as "Title 75 of the Pennsylvania Consolidated Statutes"); *e.g. id.* § 11-708(b), 11-708(c), 11-708(m), 11-708(p), 11-714(b), 11-722, 11-1001; *see id.* § 11-101 (in "Ch. XI. Vehicles and Traffic" "Pt. A. General Regulations" "Words and phrases, when used in this ordinance, shall have the meanings ascribed to them in the Vehicle Code of Pennsylvania, as now in force, or as hereafter amended, enacted or

so interpreted and construed as to effectuate its general purpose to make uniform the law throughout this Commonwealth and *all political subdivisions*."[53] Moreover, when municipalities exercise their police power to regulate areas where the State has already legislated, they may only "impos[e] restrictions which are in addition to, and not in conflict with, statutory regulations."[54] Thus, local ordinances are merely "supplemental or additional regulations" that rest on top of—and do not displace—the State code.[55]

The Pennsylvania Vehicle Code provides procedures for removal of "abandoned vehicles," defined, in relevant part, as "a vehicle . . . [that] has remained illegally on a highway or other public property for a period of more than 48 hours."[56] When a vehicle is abandoned, municipal officials must "complete an abandoned vehicle information report" and provide it to the "salvor" (towing company).[57] Within 48 hours of taking possession of the vehicle, the salvor must "send an abandoned vehicle information

---

reenacted, except where the context clearly indicates a different meaning."). These cross-references all appear in the version of the Municipal Code that appears in the record, so VW is simply incorrect when it claims that "[t]he statute's alleged incorporation into State College's policy appears nowhere in the record." Doc. 57 at 10. Moreover, state laws are matters of public record, and Courts take judicial notice of such materials as a matter of course. *Junction R. Co. v. Bank of Ashland*, 79 U.S. 226 (1870). The contention that these laws could apply is a legal argument that State College had no obligation to disclose in discovery. *See NECA LLC v. Jazwares, LLC*, 2025 WL 1189915, at *8 (D.N.J. Apr. 24, 2025). Nevertheless, it is significant that State College never mentioned the Pennsylvania provisions in discovery despite disclosing and discussing the Municipal Code at length. I need not dive into this issue, however, because the facts show that the state law was not invoked until far later than State College claims.

53    75 Pa. Cons. Stat. § 103 (emphasis added).
54    *PPL Elec. Utils. Corp. v. City of Lancaster*, 214 A.3d 639, 648 (Pa. 2019) (quoting *Harris-Walsh, Inc. v. Borough of Dickson City*, 216 A.2d 329, 333-34 (Pa. 1966)).
55    *See Skepton v. Borough of Northampton*, 486 A.2d 1022, 1023-24 (Pa. Commw. Ct. 1985) (citing *Holland Enters., Inc. v. Joka*, 439 A.2d 876 (Pa. Commw. Ct. 1982)).
56    75 Pa. Cons. Stat. § 102; *see id.* §§ 7301-7312.
57    *Id.* § 7303.1(a).

report to" PennDOT.[58] PennDOT must then "notify by certified mail . . . the last known registered owner of the vehicle and all lienholders of record that the vehicle is being held as abandoned," and the notice must include information about how to recover the vehicle and challenge the municipality's determination that the vehicle was abandoned, which can result in a waiver of all fees and penalties.[59] Upon recovery, the vehicle owner must "pay the costs for towing and storage from the date the salvor submitted the abandoned vehicle report to the department" unless they have been waived due to a successful challenge.[60]

These provisions did not immediately come into play in this case, however, because State College did not process the Audi as abandoned pursuant to Pennsylvania law. The "abandoned vehicle information report" required by law to trigger the state abandonment process is "prescribed by" PennDOT.[61] That form appears to be a "PA 952": a form that is provided by PennDOT and entitled "POLICE REQUEST FOR REMOVAL OF ABANDONED VEHICLE."[62] Here, however, State College has only

---

[58]  *Id.* § 7304.

[59]  *Id.* § 7305. The statute provides for notice by publication as a fallback. *Id.* § 7305(c). VW argues that the statutory term "lienholder" does not include titled owners who have leased the vehicle, Doc. 57 at 11; Doc. 62 (Pl.'s Reply) at 5; *see* Doc. 65 at 12-13, but neglects that the statute defines "owner" as "[a] person, other than a lienholder, having the property right in *or title to a vehicle*. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but *excludes a lessee under a lease not intended as security*." *Id.* § 102 (emphases added).

[60]  *Id.* § 7306.

[61]  *Id.* § 7303.1(a); *id.* § 102 (defining "department" as "[t]he Department of Transportation of the Commonwealth").

[62]  *Am. Honda Fin. Corp. v. Twp. of Aston*, 546 F. Supp. 3d 371, 375 (E.D. Pa. 2021) (citing Doc. 27-25).

produced its own local form numbered "SCPD-20," entitled "ABANDONED/TOWED/IMMOBILIZED/IMPOUNDED/SNOW EMERGENCY NOTIFICATION FORM."[63] In addition to the fact that it is not a form "prescribed by" PennDOT,[64] the SCPD-20 is significantly less detailed than a PA 952, and therefore cannot reasonably be presumed to function interchangeably with the state form.

Even if there were some doubt about whether the SCPD-20 could satisfy 75 Pa. Cons. Stat. § 7303.1(a), the actual form here indicates that State College did not invoke the state abandonment law in this matter. Form SCPD-20 contains several check boxes to describe the action taken on the vehicle at issue.[65] Here, the box for "Removing and Impounding of Illegally Parked and/or Immobilized Vehicles" citing "Borough Ordinance 1524, Ch. XI, Part H, Section 4," is checked.[66] Conspicuously *unchecked* is the box for "Abandonment of Vehicles," citing "Title 75, Pennsylvania Motor Vehicle Code."[67] Thus, it does not appear that the vehicle was initially towed as abandoned under Pennsylvania law, but was instead removed *only* for violations of the State College ordinances.

State College's ordinances confirm that they have modified Pennsylvania's abandonment rules to accommodate their parking ordinances. Rather than treating

---

[63]  Doc. 50-6. State College misleadingly describes the "forms and notices" it prepared as complying with "state law," but the actual documents it cites do not comport with state law. *See* Doc. 50 ¶ 30. Moreover, I have determined that, for the purposes of this motion, State College did not send this form to PennDOT. *Supra* note 29.

[64]  75 Pa. Cons. Stat. § 7303.1(a).

[65]  Doc. 50-6.

[66]  *Id.*

[67]  *Id.*

12

illegally parked vehicles as abandoned after 48 hours,[68] State College charges the vehicle with violations, and then begins its immobilization procedures once the requisite number have accrued.[69] State College then tows *pursuant to its own policies*,[70] and provides that "[v]ehicles unclaimed within *45 days* of towing and storage shall be deemed abandoned and subject to disposal, as such, in the manner authorized by law."[71]

Because of State College's policies, Karch did not "tak[e] possession of [the] vehicle pursuant to section 7303.1," and was not required to "within 48 hours after taking possession send an abandoned vehicle information report to [PennDOT]."[72] That does not *preclude* the State abandonment procedure from taking effect—Karch could have begun the abandonment process once the Audi had been on its lot for 45 days.[73] But, based on the record, the abandoned vehicle procedure was not immediately employed by State College, and it therefore is not entitled to rely on the notice that procedure would have provided.[74] And even if it could, that notice would have come *no sooner* than 45 days after the tow.[75]

---

[68]   75 Pa. Cons. Stat. § 102.
[69]   State College, Pa., Mun. Code § 11-1002.
[70]   *Id.* § 11-1006.
[71]   *Id.* (emphasis added).
[72]   75 Pa. Cons. Stat. § 7304.
[73]   State College, Pa., Mun. Code § 11-1006; *see* 75 Pa. Cons. Stat. § 7311.1(b)(1) (providing that an abandoned vehicle "includes a vehicle towed to a salvor's property that has remained on the salvor's property for a period of 20 days").
[74]   This review of the record explains why Karch and PennDOT apparently did not notify VW of the tow. Doc. 49 (Def.'s Mot.) at 3.
[75]   State College, Pa., Mun. Code § 11-1006; *see* 75 Pa. Cons. Stat. § 7311.1(b)(1).

### 5.   Impoundment and Fees

Eventually, Karch determined that VW owned the Audi, and on December 9, 2022, called to request payment of the outstanding fees.[76] Specifically, Karch requested $12,119: $2,844 owed to State College and $60 to Karch for each day of storage.[77] VW attempted to negotiate the fees and recover the Audi, but Karch was unreceptive.[78] In any event, the record suggests that Karch would have needed State College's approval to release the Audi.[79] It does not appear that there were any additional substantial attempts to recover the Audi without litigation.[80]

### 6.   Post-Settlement Recovery

VW eventually settled with Karch and recovered the Audi.[81] It then sold the Audi at auction for $29,900.[82] VW compares that price to the J.D. Power Used Car Guide's "Average Auction Value" of $35,725 for an Audi S5 on the week of the impoundment,[83] and asserts that its damages are the difference: $5,825.[84]

---

[76]   Doc. 50 ¶ 32; Doc. 52 ¶¶ 25-26.

[77]   Doc. 50 ¶¶ 33-34; Doc. 52 ¶¶ 26-27.

[78]   Doc. 50 ¶¶ 35-38; Doc. 52 ¶¶ 26, 28.

[79]   Doc. 52 ¶¶ 34-35.

[80]   Doc. 50 ¶¶ 38-39; Doc. 52 ¶ 28. VW asserts that it "continued to seek to recover the Vehicle from State College and Karch" after Karch refused to negotiate, Doc. 52 ¶ 28, but its only evidence of these efforts is an entirely conclusory statement. Doc. 46-5 ¶ 16. That is insufficient, *Nitkin*, 67 F.4th at 571, and I therefore deem it undisputed that VW did not attempt to secure release of the Audi without litigation after Karch refused to negotiate. Fed. R. Civ. P. 56(e)(2).

[81]   Doc. 33 (Stipulation of Dismissal); Doc. 52 ¶ 62.

[82]   *Id.* ¶ 63.

[83]   Doc. 52 ¶ 65. VW's SOUMF erroneously states that it used the "Average Auction Value" for "the week of July 13, *2023*," *id.* (emphasis added), but the relevant declaration and exhibit clarify that it is using the Average Action Value from the week of July 13, *2022*. Doc. 46-5 (McGovern Decl.) ¶ 20; *id.* at 26 ("Period: July 13, 2022").

[84]   Doc. 50 ¶ 65-66.

### 7.    Procedural History

On July 24, 2023, VW filed suit against Karch in the Court of Common Pleas of Centre County, Pennsylvania.[85] On January 24, 2024, VW filed the instant suit against Karch and State College.[86] On December 20, 2024, VW voluntarily dismissed the Centre County action.[87]

The parties proceeded to discovery and, following mediation,[88] VW and Karch settled.[89] VW and State College thereafter filed cross-motions for summary judgment, which are now fully briefed and ripe for resolution.[90] Both parties also filed motions for Rule 11 sanctions, which are under advisement and will be decided separately.[91]

### C.    Analysis

Remaining in this litigation are VW's claims against State College for violations of the Fourth (unreasonable seizure), Fifth (uncompensated taking), and Fourteenth Amendments (procedural due process) to the United States Constitution brought pursuant to 42 U.S.C. § 1983.

To make out a section 1983 claim, the Plaintiff must prove "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the

---

[85]    Doc. 50 ¶ 66.
[86]    *Id.* ¶ 69; *see* Doc. 1 (Compl.).
[87]    Doc. 50 ¶ 68.
[88]    *See* Doc. 25 (Order Referring Case for Mediation).
[89]    Doc. 33 (Stipulation of Dismissal).
[90]    Docs. 46, 48 (Mots. for Summ. J.).
[91]    Docs. 61, 64 (Mots. for Sanctions).

Constitution or laws of the United States."[92] Because it is a municipality, State College "may be held liable only if its policy or custom is the 'moving force' behind [the] constitutional violation."[93]

Although State College briefly argues that the conduct at issue was carried out independently by Karch, the "state action" aspect of the first element is met here because Karch "acted at [State College's] behest—the Borough's ordinances and officers direct [Karch] when to tow, when to notify owners and drivers, whom it must notify, and how much it can charge for its services."[94]

Moreover, this holding also establishes that, if a constitutional violation occurred, State College's policies were the cause.[95] And although I have determined that the process of towing the Audi was pursuant solely to State College's own Municipal Code, a municipal policy of applying state law in a distinctive way—here, towing based on local parking violations and retaining local authority over when the vehicle can be released—is just as actionable as local law.[96] So the analysis here focuses solely on whether VW's constitutional rights were violated.

---

[92] *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)).

[93] *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (citing *Bd. of Cnty. Commn'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997)); *see Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658 (1978).

[94] *Honda Lease Tr. v. Malanga's Auto.*, 152 F.4th 477, 484 (3d Cir. 2025) (citing *Stypmann v. City & Cnty. of San Francisco*, 557 F.2d 1338, 1341 (9th Cir. 1977)).

[95] *Am. Honda Fin. Corp. v. City of Revere*, 471 F. Supp. 3d 399, 404 (D. Mass. 2020)

[96] *Id.* (holding that municipality's "application of the [state] Statute is municipal policy" that is actionable in *Monell* claim); *see Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999); *Rios v. Martin*, 2025 WL 2484260, at *6-7 (M.D. Pa. Aug. 28, 2025).

VW's arguments are not entirely clear. In its motion it describes purported Constitutional violations throughout State College's towing and impoundment process, both before and after the tow.[97] In subsequent briefs, it walks those contentions back and focuses on: (1) the lack of post-deprivation notice and hearing and (2) the requirement of payment before the Audi was returned.

### 1.   Fourteenth Amendment – Due Process

In its motion for summary judgment, VW stakes out maximalist positions, arguing that State College's policy violates the Due Process Clause of the Fourteenth Amendment as a matter of law because it did not provide *any* notice to VW that the Audi had been towed or *any* hearing to challenge the tow or the fees. VW also contends that State College was required to provide a hearing before "permitting Karch to assert a possessory lien and threaten to sell the vehicle."[98]

State College's response is essentially entirely focused on its argument that it provides notice through state law. It concedes that its local process did not give any notice to lienholders like VW.[99]

As I have stated, the tow at issue was effectuated pursuant to State College Municipal Code provisions that could not trigger the Pennsylvania notice procedure until 45 days after the tow.[100] Thus, I consider whether VW's Due Process rights were violated both before and after the 45-day deadline for abandonment.

---

[97]   *See* Doc. 51 (Pl.'s Mot.) at 11 (challenging reasonableness of initial seizure).
[98]   *Id.* at 23.
[99]   Doc. 50 ¶¶ 47-48.
[100]  *Supra* at 12-14.

The Fourteenth Amendment's Due Process Clause "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests."[101] "A Fourteenth Amendment procedural due process claim consists of three elements: (i) a deprivation of life, liberty, or property; (ii) by a state actor; (iii) without due process of law."[102]

As to the first factor, the Third Circuit recently held that a titled owner "has a private interest at stake" in the impoundment of a vehicle it has leased out "because of its 'property interest in the present value of a seized vehicle.'"[103] That is VW's interest: "[w]hen the [Audi] was on [Karch's] lot, [VW] had a right to possess it but could not because it did not know of the impoundment."[104]

The second factor is established by the state actor analysis *supra*.[105]

Turning to the third factor, in *Mathews v. Eldridge*, the Supreme Court noted that "due process is flexible and calls for such procedural protections as the particular situation demands."[106] To determine how much process is due in a given case, the Supreme Court explained that courts should consider three distinct factors: "[f]irst, the

---

[101] *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

[102] *Parker v. N.J. Motor Vehicle Comm'n*, 158 F.4th 470, 481 (3d Cir. 2025) (citing *Reed v. Goertz*, 598 U.S. 230, 236 (2023)); *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (stating test with two factors: "(1) [Plaintiff] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law.").

[103] *Malanga's*, 152 F.4th at 484 (quoting *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007)).

[104] *Id.*; *see Am. Honda Fin. Corp. v. Twp. of Aston*, 546 F. Supp. 3d 371, 379 (E.D. Pa. 2021); *see Am. Honda Fin. Corp. v. City of Revere*, 471 F. Supp. 3d 399, 406 (D. Mass. 2020).

[105] *Supra* at 17.

[106] 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

18

private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[107] "The 'core' process due under the Constitution is 'notice and a meaningful opportunity to be heard.'"[108] But, based on the circumstances of a given case, "the usual requirement of written notice may be relaxed, and the timing and content of a hearing may vary."[109]

To the extent VW argues that State College should have provided pre-tow notice and a hearing, it is wrong. "Not every deprivation of a property interest requires a pre-deprivation hearing."[110] Post-deprivation hearings are generally considered sufficient in the context of vehicular towing.[111] Nevertheless, the post-towing notice and hearing must be "prompt," if they are to be "meaningful."[112] In *Malanga's* the Third Circuit

---

[107] *Id.* at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)); *Malanga's*, 152 F.4th at 484-85 (citing *Mathews*, 424 U.S. at 335).

[108] *Parker v. N.J. Motor Vehicle Comm'n*, 158 F.4th 470, 482 (3d Cir. 2025) (citing *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)); *Malanga's*, 152 F.4th at 484-85 (quoting *Mathews*, 424 U.S. at 333 and *Propert v. District of Columbia*, 948 F.2d 1327, 1332-33 (D.C. Cir. 1991)).

[109] *Propert*, 948 F.2d 1332 (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975) and *Mathews*, 424 U.S. 347-49); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 421 (3d Cir. 2000).

[110] *Parker*, 158 F.4th at 482 (*citing Gilbert v. Homar*, 520 U.S. 924, 930 (1997)).

[111] *Malanga's*, 152 F.4th at 484-85 (quoting *Propert v. District of Columbia*, 948 F.2d 1327, 1332-33 (D.C. Cir. 1991)); *Shaheed v. City of Wilmington*, 2022 WL 16948762, at *6 (D. Del. Nov. 15, 2022) (citing *Sutton v. City of Milwaukee*, 672 F.2d 644, 646 (7th Cir. 1982) and *Abernathy v. City of Pittsburgh*, 795 F. App'x 85, 87 (3d Cir. 2020)); *Abernathy*, 795 F. App'x at 87 (citing *City of Los Angeles v. David*, 538 U.S. 715, 719 (2003)).

[112] *Propert*, 948 F.2d at 1332 (*Cokinos v. District of Columbia*, 782 F.2d 502 (D.C. Cir. 1983)).

accepted the concession that post-deprivation notice to a lessor "within a month timeline would be perfectly acceptable."[113]

Within that framework, I apply the *Mathews* factors and find that State College's process was lacking as to the period before Pennsylvania's abandonment law would provide notice, but the post-abandonment process is constitutionally sufficient.

### a.    Pre-Abandonment

As to the first factor, before the vehicle is considered abandoned pursuant to the State College Municipal Code, VW's private interest, although not as significant as "the driver who must use his vehicle to get to work" and is therefore entitled to speedy notice,[114] "is still considerable."[115] VW has an interest in the present value of the Audi and its use as a business commodity. Thus, this factor turns in VW's favor.[116]

On the second *Mathews* factor, before abandonment, the deprivation is solely that of "the continual depreciation of the [Audi]'s value and the denial of an income stream to [VW]."[117] Because State College concedes that it does not provide notice until Pennsylvania's abandonment laws can trigger—45-days after the tow[118]—State College's policies "create a risk of erroneous deprivation" of the present value of the vehicle, opportunities to use it for profit, and the significant "storage fees" charged by

---

[113] *Malanga's*, 152 F.4th at 486.
[114] *Id.* at 486 (citing *Coleman v. Watt*, 40 F.3d 255, 261 (8th Cir. 1994) and *Stypmann*, 557 F.2d at 1344).
[115] *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 194 (2d Cir. 2007); *Twp. of Aston*, 546 F. Supp. 3d at 380.
[116] *See City of Revere*, 471 F. Supp. 3d at 407-08.
[117] *Twp. of Aston*, 546 F. Supp. 3d at 380.
[118] *See* State College, Pa., Mun. Code § 11-1006.

towing companies.[119] Given the entire lack of notice to lienholders during this 45-day period, and the consequences of the delay before notice eventually issues, I find that this factor cuts in favor of VW for the pre-abandonment deprivation.[120]

As to the third factor, "providing prompt notice to lienholders would not substantially burden" State College.[121] As many courts have now noted, in the modern age it is not difficult for a municipality to identify every party with a security interest in a vehicle.[122] Indeed, State College believed that it was already identifying all interested parties when it towed vehicles for parking violations, and, because of this litigation, "now takes more steps to identify the record owner."[123] So the burden of providing better, more timely notice is minimal, and this factor cuts in VW's favor.

### b.    Post-Abandonment

Turning to the post-abandonment process under state law, when total sale of the vehicle is permitted, VW's interest is in its possession of the vehicle *at all*, which is

---

[119] *Malanga's*, 152 F.4th at 484, 488; *see Brite Fin. Servs., LLC v. Bobby's Towing Serv., LLC*, 461 F. Supp. 3d 549, 560-61 (E.D. Mich. 2020) (holding unconstitutional law that caused "vehicle owner [to] go without notice of the tow for a minimum of seven days").

[120] *See Twp. of Aston*, 546 F. Supp. 3d at 379-80 (finding that "ongoing economic harm during this [25-day] delay: fees accumulated while the Accord's value depreciated, and the Company was denied income by selling or leasing the car," cut in favor of lienholder); *Ford Motor Credit Co.*, 503 F.3d at 194 ("The risk of delay under the current procedures is thus substantial."). This is true even if "for many of its towed vehicles [VW] will not have a right to possession because the driver will not have defaulted on payment," because State College has no way to determine when the circumstances would entitle VW to immediate position, thus creating a risk of erroneous deprivation. *See Malanga's*, 152 F.4th at 486.

[121] *Twp. of Aston*, 546 F. Supp. 3d at 380 (citing *DCFS USA v. District of Columbia*, 803 F. Supp. 3d 29, 42 (D.D.C. 2011)); *Malanga's*, 152 F.4th at 488 (noting the "relatively light burden on Butler to change its notice policies").

[122] *Twp. of Aston*, 546 F. Supp. 3d at 380.

[123] Doc. 50 ¶ 48.

significantly higher than the mere use of the vehicle.[124] Thus, this factor is even more in VW's favor than in the pre-abandonment context.

With regard to the second factor, it is well established that "as a lienholder, [VW] should have received adequate notice and had the opportunity for a hearing before the Vehicle was put up for sale."[125] Under the policies at issue here, however, there was not a serious risk of erroneous total deprivation. State College's Municipal Code does not directly authorize disposal of a seized vehicle. Instead, it provides that "[v]ehicles unclaimed within 45 days of towing and storage shall be deemed abandoned and subject to disposal, as such, in the manner authorized by law."[126] The disposal procedures "authorized by law" in Pennsylvania are those set forth in the state code, and require the salvor to submit an abandoned vehicle report to PennDOT, after which PennDOT will provide notice to the owner and lienholders of the vehicle including information about where the vehicle is held, how it can be recovered, and their right to a hearing.[127] An abandoned vehicle can only be disposed of "after the expiration of 30 days from the date of notice sent by certified mail to the registered owner and all lienholders of record."[128]

---

[124] *See DCFS*, 803 F. Supp. 2d at 38.

[125] *City of Revere*, 471 F. Supp. 3d at 409 (citing *Ford Motor Credit Co. v. NYC Police Dep't*, 394 F. Supp. 2d 600, 610 (S.D.N.Y. 2005), *aff'd*, 503 F.3d 186); *see Propert*, 948 F.2d at 1335 (reasoning that municipality "may not . . . act to *destroy* the car without affording the owner post-towing notice and an opportunity to be heard"); *DCFS*, 803 F. Supp. 2d at 40.

[126] State College, Pa., Mun. Code § 11-1006.

[127] 75 Pa. Cons. Stat. §§ 7303.1, 7304, 7305

[128] *Id.* § 7307.

Although that procedure does not appear to have been followed here even after the 45-day period, no one disputes that VW did receive notice—albeit informally—before Karch considered selling the Audi at auction.[129] And, although VW takes issue with the format, State College does provide several opportunities for an informal hearing before State College's head of parking enforcement to challenge immobilization, a tow, and attendant fines and storage fees, which is then appealable to the Pennsylvania courts,[130] and state law offers a hearing to challenge the abandonment determination, which can result in waiver of all towing and storage fees.[131] I find that the hearings offered by State College, though informal, satisfy due process with regard to the risk of total deprivation.[132] Given that there will eventually be notice and an opportunity for a hearing, there is not a relevant risk of erroneous *permanent* deprivation.[133]

---

[129] *See DCFS*, 803 F. Supp. 2d at 39-40 ("That the District violated the notification requirements outlined in its own laws or regulations, however, does not itself mean that it deprived DCFS of procedural due process.").

[130] State College, Pa., Mun. Code §§ 11-1005; 11-1010; 2 Pa. Cons. Stat. § 751-754.

[131] 75 Pa. Cons. Stat. § 7305(b)(5).

[132] *See J.W. Gant & Assocs., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 791 F. Supp. 1022, 1028 (D. Del. 1992) ("Due process does not require a particular form or manner of hearing, but rather requires only an opportunity to be heard appropriate to the circumstances."); *Fraser v. Pa. State Univ.*, 654 F. Supp. 3d 443, 458-60 (M.D. Pa. 2023) (explaining that administrative decisionmakers "are 'presumed to be impartial, and only evidence of actual bias or a likelihood of bias can support a due process claim.'" (quoting *Park v. Temple Univ.*, 757 F. App'x 102, 106 (3d Cir. 2018))); *see Morris v. City of Danville, Va.*, 744 F.2d 1041, 1044-45 (4th Cir. 1984).

[133] *See City of Revere*, 471 F. Supp. 3d at 408 ("If it is unlikely that property would ultimately be sold without notice to all interested parties, courts will tend to uphold policies that provide a substantial benefit to the government."); *Twp. of Aston*, 546 F. Supp. 3d at 380 (reasoning that "Aston's delay in notifying Honda did not itself increase the risk of an erroneous deprivation"); *Abernathy v. City of Pittsburgh*, 795 F. App'x 85, 87 (3d Cir. 2020) (holding that state abandonment procedure satisfies due process).

Finally, as to the third factor, given my determination that State College must provide better notice before the 45-day period has run, I find that no additional steps are necessary to ensure that the state abandonment process is timely. Under that regime, all interested parties will receive notice that the vehicle has been seized well before abandonment is even possible, and will again receive notice once the abandonment process has begun. That is sufficient notice, and no further steps are necessary.

*   *   *

The *Mathews* factors tilt decisively for VW on the issue of pre-abandonment notice, and I therefore grant VW's motion for summary judgment on the Due Process claim, and deny State College's motion on this count. I nevertheless stress the limit of this holding. State College simply did not provide sufficient notice to VW that its property had been seized, such that it could take timely steps to recover that property before its value had depreciated and significant fees accrued. State College has apparently already remedied this issue of its own accord, although that does not resolve the harm that VW has already suffered. But no greater notice is required to protect against complete deprivations than the existing Pennsylvania abandoned vehicle procedures.

### 2.    Fourth Amendment – Unreasonable Seizure

In its motion, VW argues that State College violated the Fourth Amendment both by initially seizing the Audi and by unlawfully retaining it beyond any warrantless seizure justification. Nevertheless, I do not analyze the validity of the initial seizure (the

24

tow). Despite VW's argument in its opening brief that the initial seizure was unconstitutional,[134] it entirely abandoned that point in its reply and criticized State College for focusing on this "irrelevant" issue.[135] By disavowing this point, VW has waived it.[136] In any event, I would agree with State College that  initial warrantless seizure was justified by the community caretaking exception.[137]

As to prolonged detention, the Third Circuit in *Malanga's* explained that "when the government seizes property, the Fourth Amendment requires that its initial seizure and continued retention be reasonable."[138] Under similar circumstances to the case at bar, the Court held that it is reasonable for a municipality to retain possession of a vehicle seized pursuant to the community caretaking exception until a lienholder "requested its release."[139] Here, VW requested Karch to release the Audi, and Karch refused to do so until VW paid the storage fees and fines in full.[140] The issue for VW is that "[a]lthough the tower retains the vehicle and thus plays a central role in the governmental appropriation of property, he is not in a position to provide the procedural

---

[134] Doc. 51 at 11-12.

[135] Doc. 61 (Pl.'s Reply) at 11 ("State College focuses entirely on its removal of the Vehicle from a parking garage when arguing that its actions fall within the community caretaking exception. But State College's other actions are the problem."); *id.* at 12 & n.5 (describing towing cases focusing on the initial seizure as "irrelevant"); *see also* Doc. 57 (Pl.'s Opp'n) at 6 (focusing on "***continued retention***" (emphasis in original)).

[136] *See Simko v. United States Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021) ("Waiver is the intentional abandonment of an argument." (citing *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 146-47 (3d Cir. 2017))

[137] *Malanga's*, 152 F.4th at 489 (citing *United States v. Smith*, 522 F.3d 305, 313 (3d Cir. 2008)).

[138] *Id.*

[139] *Id.* at 489-90. The panel specifically noted that delay in the lienholder's ability to request release which was caused by a failure to provide it with notice was "properly rectified as part of [the lienholder's] due process claim." *Id.* at 90 n.2.

[140] Doc. 50 ¶¶ 34-36, 38.

avenue by which the vehicle may be released."[141] Only the municipality is in a position to determine the validity of the tow and thus whether the fees are properly charged,[142] so the request for release of the vehicle must be addressed to the municipality itself.[143] That is especially true here, where everyone agrees that Karch *could not* release the vehicle without State College's permission.[144] The record contains no evidence to show that VW ever asked State College to release the vehicle.[145] With no properly made request for release, "it was reasonable for [State College] to retain possession of the vehicle."[146]

VW also argues that State College violated the Fourth Amendment by retaining the Audi "to force payment."[147] This framing mischaracterizes the facts of this case. The issue of *how* an owner can recover a vehicle is a due process question,[148] and it is well established that a "pre-payment requirement" to recover a seized vehicle is "constitutional so long as there is an opportunity to post a bond in the same amount."[149] That is State College's process. The Municipal Code permits payment of fees "under

---

[141] *Mays v. Scranton City Police Dep't*, 503 F. Supp. 1255, 1264 (M.D. Pa. 1980).
[142] *Id.*
[143] *See Malanga's*, 152 F.4th at 489-90 (reasoning that there was no Fourth Amendment violation even though tower refused to return the vehicle even after "borough officials . . . issued the necessary release form").
[144] Doc. 46-6 at 94.
[145] *See supra* note 80 (deeming as admitted that VW did not communicate with State College about releasing the Audi).
[146] *Malanga's*, 152 F.4th at 489.
[147] Doc. 51 at 15.
[148] *See Breath v. Cronvich*, 729 F.2d 1006, 1011 (5th Cir. 1984).
[149] *Brite Fin. Servs.*, 461 F. Supp. 3d at 562 (collecting cases); *Sheller v. City of Phila.*, 2012 WL 4754820, at *7 (E.D. Pa. Oct. 5, 2012) (citing *Breath*, 729 F.2d at 1011 and *Stypmann*, 557 F.2d at 1343-44).

protest,"[150] which will secure release of the vehicle while the legitimacy of the fees is litigated.[151] Given that there is a process for "the vehicle owner [to] be relieved of any fees or costs associated with the towing and storage" if they occurred wrongfully,[152] there is no constitutional violation in requiring payment of a bond equal to those fees and costs while that determination is made.

Accordingly, State College's motion for summary judgment on the Fourth Amendment claim is granted, and VW's motion on the same count is denied.

### 3.   Fifth Amendment – Unlawful Taking

Given the Fourth Amendment analysis, *Malanga's* entirely resolves VW's Fifth Amendment claim. State College's "Fourth Amendment justification never 'ran out' because it was reasonable for it to keep possession of the vehicle until [VW] sought its return," and VW failed to make such a request.[153] "Thus, no taking occurred."[154] Moreover, Karch never actually attempted to sell the Audi, and would have had to go through the state process, which offers notice and a hearing, to do so. State College "did not give [Karch] title to the vehicle, only a lien," and that lien could be erased if VW showed that it was erroneously imposed.[155] There was no Fifth Amendment violation

---

[150]  State College, Pa., Mun. Code § 11-715.
[151]  *Id.* § 11-1006.
[152]  *Sheller*, 2012 WL 4754820, at *7.
[153]  *Malanga's*, 152 F.4th at 490.
[154]  *Id.*
[155]  *Id.*

here. State College's motion for summary judgment on this count is granted, and VW's motion for summary judgment is denied.

### 4.    Damages

Having prevailed on its Due Process claim, VW is entitled to at least nominal damages.[156] Regarding compensatory damages, however, I find VW's evidence facile. Simply comparing the average auction value of models like the Audi to the Audi's auction value fails to consider that the Audi in this case was entirely unaccounted for from May 2020 until February 2022 and apparently sat unattended in a public parking garage from February 2022 until July 2022. The Court is left with no way to determine whether (or how much of) the depreciation in the Audi's value resulted from the period before State College towed it, for which State College cannot be liable, as opposed to after the tow, for which it can.[157] If it still wishes to pursue compensatory damages, VW may renew its request to address these questions either by presenting proof that the depreciation in value was due to State College or by contending that such proof is not necessary.

Because State College's motion for sanctions is directly related to the issue of damages,[158] I defer that matter and will consider it once the parties have set forth a plan for further damages briefing.

---

[156] *Am. Honda Fin. Corp.*, 546 F. Supp. 3d at 384 (citing *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 284 (3d Cir. 2008)).

[157] *Id.* ("Exactly what part of the economic harm Honda sustained between August 2018 and January 2021 is attributable to Aston's wrongful actions is unclear.").

[158] *See generally* Doc. 66 (Mot. for Sanctions).

## III.   CONCLUSION

For the above-stated reasons, both motions for summary judgment are granted in part and denied in part. VW's motion for sanctions is granted. State College's motion for sanctions is deferred. A declaratory judgment will be issued in VW's favor on the Due Process count.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge